

Villanova University School of Law

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2005

# Edwards v. Kelly

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3105

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Edwards v. Kelly" (2005). *2005 Decisions.* Paper 1048.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1048

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———

No. 04-3105

———

STEPHEN EDWARDS

<u>Appellant</u>

v.

MARK KELLY, OFFICER, BADGE NO. 5894, A BENSALEM POLICE
DEPARTMENT OFFICER AND MEMBER OF THE EASTERN AUTO THEFT TASK
FORCE; ERIK TURK, CORPORAL, BADGE NO. 37, AN OFFICER OF THE
BETHLEHEM POLICE DEPARTMENT AND MEMBER OF THE EASTERN AUTO
THEFT TASK FORCE; FREDRICK HARRON, OFFICER, DEPUTY DIRECTOR OF
PUBLIC SAFETY WITH THE BENSALEM TOWNSHIP POLICE DEPARTMENT

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-03006)
District Judge: Honorable Ronald L. Buckwalter

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 21, 2005

Before: ROTH, FUENTES, and STAPLETON, <u>Circuit Judges</u>.

(Filed June 8, 2005 )

OPINION OF THE COURT

———

FUENTES, <u>Circuit Judge</u>.

Stephen Edwards appeals from the District Court's grant of summary judgment in favor Officers Mark Kelly, Erik Turk, and Fredrick Harran. Edwards sued the defendants for various federal and state civil rights violations arising out of his arrest for forgery, tampering with public records, and securing execution of documents by deception. The District Court granted judgment in favor of the defendants after finding that probable cause existed and that no material omissions or false assertions were made in the probable cause affidavit. Because we agree that there were no material omissions or assertions in the affidavit, we will affirm.

**I.**

As we write solely for the benefit of the parties, who are well acquainted with the facts of this case, we only present the relevant facts.[1] Stephen Edwards has owned and operated A Super-Limo Company ("Super-Limo"), which, as the name suggests, provides limousine service in various cities around the country. In January 2000, Edwards acquired a car (the "Car") for Super-Limo by wiring money to an associate and directing her to purchase Car with a cashier's check (the "Check"). She registered and titled the car in her name, in accordance with Edwards's request.

---

[1]We note that the briefs often spell the names of people and entities in different ways. We use the spellings most frequently used by the District Court.

Edwards was later informed by Louis Devers, a former driver of his that had started his own limousine company, All Star Limousine ("All Star"), that Devers was seeking an additional car in order to meet rising demand. Edwards decided to transfer the Car to Devers, and Devers agreed to pay a monthly rental fee for the Car and had the title changed to name All Star. Edwards claims that the transfer of the Car was done as part of an oral agreement involving his purchase of All Star, which never reached consummation.

Over time, Edwards relationship with Devers deteriorated and Edwards demanded that the Car be returned. Devers refused to return the Car, as he believed that Edwards owed him money. Edwards made several requests for the Car, and after each refusal, he contacted the Bensalem Police Department to complain. He was advised that this was a civil matter and that he should file a civil complaint.

During this time, Edwards contacted PennDOT (the Pennsylvania agency responsible for the titling of cars, among other things) in order to get the Car titled in his name. He told the service representative that he had lost the title and provided her with the Bill of Sale and proof of insurance as evidence of his ownership. Edwards submitted the forms needed to get the title issued, signing them on behalf of All Star, even though he had not actually purchased the company. The title was issued.

Edwards's repeated complaints came to the attention of the Department's Deputy Director of Public Safety, Fredrick Harran, who eventually directed Officer Mark Kelly, a fellow member of the state's Auto Theft Task Force, to investigate the possibility that two

3

titles existed for the Car. Kelly was assisted by State Trooper Erik Turk, who is also a member of the Task Force. In support of his complaints against Devers, Edwards had faxed documents, including the new title, to the Police. In the course of his investigation, Kelly noticed that one copy of the Check, photocopied at the bottom of the Bill of Sale, differed from another copy, which accompanied the insurance temporary identification card. There were no differences that would have any practical consequences.[2] Having verified the authenticity of the Bill of Sale copy of the Check, Kelly came to believe that the insurance copy was not genuine. Based on interviews with the notary public who notarized forms for Edwards and the various other people involved in this matter, Kelly and Turk concluded that Edwards had acted fraudulently in obtaining title from PennDOT by falsely representing himself as the owner of All Star.

Kelly and Turk filed an affidavit of probable cause, and were granted an arrest warrant for Edwards on charges of forgery, tampering with public records, and securing execution of documents by deception. Because Edwards resided in Arizona, Turk prepared the paperwork to support an extradition warrant. The need for extradition was obviated by Edwards's decision to return to Pennsylvania voluntarily. After a preliminary hearing, Edwards was held over based on three of the charged counts, and the case was eventually nolle prossed by the District Attorney's office.

---

[2]The alignment of some of the information on the checks was clearly different, the name of the payee included "Inc." on one check but not the other, and the signatures on the checks were not identical.

4

Edwards brought suit against Harran, Kelly, and Turk under 42 U.S.C. § 1983 for false arrest, arrest without probable cause, false imprisonment, and malicious prosecution. He also included supplemental state law claims of the same nature. Essentially, he contended that the officers should have known that he did not possess the intent required under the crimes for which he was charged, because all of the allegedly illegal activity was done under his good faith belief that he owned the car. The District Court granted summary judgment in favor of the officers after finding that probable cause existed on the facts in the affidavit and that no material misrepresentations or omissions were made. The existence of probable cause negated any Fourth Amendment violation, rendering the § 1983 claims defective, and was fatal to the state law claims because the lack of probable cause was an element of each of the claims. Having disposed of the claims on this ground, the District Court did not reach the issue of qualified immunity (or immunity under the Pennsylvania Tort Claims Act).

Edwards appeals, contending that the District Court erred in granting summary judgment to the defendants because genuine issues of material fact existed and the District Court improperly resolved these issues and granted inferences in favor of the officers. His main arguments all concern the District Court's probable cause analysis.

**II.**

The District Court had jurisdiction over this § 1983 case under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under § 1367. The standard of review applicable to an order granting summary judgment is plenary. See Curley v. Klem, 298 F.3d

5

271, 276 (3d Cir. 2002). Accordingly, the District Court's grant of summary judgment was proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). In evaluating the evidence, we are required to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. Id. at 276-77.

Police officers may submit affidavits of probable cause to judicial officers in order to get arrest warrants. The Supreme Court has held that there is "a presumption of validity with respect to the affidavit supporting [a] search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978). This presumption applies with equal force to arrest warrants. See Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). In order to rebut this presumption

> the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for [the] warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997); see also Wilson, 212 F.3d at 786 (applying the test in the arrest warrant context). "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know." Wilson, 212 F.3d at 788 (internal quotation and alteration omitted). "An assertion is made with reckless disregard when[,] viewing all the evidence, the affiant must have entertained serious doubts as to the

6

truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. (internal quotation omitted).

"To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id. at 789. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995).

### III.

Edwards first argues that the officers knew or should reasonably have known that the copy of the check mailed to the PennDOT was not forged due to various facts of which they were aware. However, the important question here is whether those facts were omitted from or misstated in the affidavit, and if so, whether the omissions or misstatements were material.[3]

---

[3]Edwards only argues on appeal that the affidavit of probable cause was based on false or omitted information. Thus, the issue here is not whether the judicial officer erred in granting the arrest warrant, and therefore there is no need to consider whether probable cause actually existed based on the facts as stated in the affidavit. See Egervary v. Young, 366 F.3d 238, 250-51 (3d Cir. 2004) (stating that where "the judicial officer is provided with the appropriate facts to adjudicate the proceeding but fails to properly apply the governing law and procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 . . . liability). Although Edwards spends much of his brief outlining why he thinks that no probable cause existed with respect to the facts in the affidavit, that argument is irrelevant to this appeal. Insofar as those arguments can be construed as suggesting that the officers omitted material legal conclusions, they are untenable. See id.

Edwards asserts that the officers omitted the following facts[4]: (1) that the bank on which the Check was drawn had confirmed the authenticity of a "nearly identical copy" of the Check that Edwards had earlier provided to the police; (2) that, because Edwards had previously provided the verified copy of the Check referenced above, he had no reason to forge the insurance copy; (3) that the discrepancies (which he lists) between the two copies were not material; and (4) that the charges related to the forgery were ultimately dismissed.

There was no omission with respect to the first fact, as the affidavit recognizes that one of the checks was verified to be the actual check. (App. 773.) As to the second "fact," the factual bases for that assertion were present in the affidavit and thus it was also not an omission. Moreover, the officers did not know why Edwards had submitted two different copies purporting to be the same check (given the minuteness of the differences), but that does not mean that they had to conclude that there was no reason why he did it. Indeed, the very fact that he did so suggests that he had some reason. With respect to the third fact, the affidavit does list the differences, so, again, no omission could be charged.[5] (App. 771.) Insofar as Edwards is suggesting that it was a reckless omission to fail to disclose that the differences were not material, his argument must be rejected. That determination is a legal one, and it is

---

[4]We agree with the District Court that, because Edwards's claims all center around the probable cause affidavit, Harran's status as a defendant is somewhat puzzling. However, we need not dwell on this point, as we affirm the rejection of all of the charges.

[5]Edwards suggests that the District Court improperly weighed evidence in scrutinizing the differences between the copies of the Check. However, the District Court simply recites the discrepancies from the affidavit, and there is no dispute over these differences.

properly left to the judicial officer scrutinizing the affidavit. See Egervary, 366 F.3d at 250-51. The last "fact" obviously was not in the officers' possession when the affidavit was filed and, moreover, it is not relevant to a probable cause determination. See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). Thus, with respect to the facts surrounding the "forged" copy of the Check, Edwards points to no reckless omissions or misrepresentations.

Edwards cites facts allegedly negating any possible specific intent to defraud. He states that the officers knew that: (1) Edwards was the equitable owner of the Car; (2) Edwards believed that he was the legal owner of the Car; (3) Edwards was repeatedly imploring the police to investigate Devers's fraudulent procurement of the Car at the same time as he was allegedly perpetrating the title fraud; and (4) they (the officers) failed to inquire with Edwards as to why he executed the PennDOT forms.

Edwards's claim to equitable ownership of the Car is based on his having paid for the vehicle. This fact is noted in the affidavit, and therefore there was no omission. (App. 773.) Once again, there is no need for the officers to have stated the possible legal effect (equitable ownership) of his purchase of the Car. The second "fact" is apparent from the narrative of the affidavit–Edwards was clearly trying to get the Car back because he believed that he owned it. (App. 769-77.) It cannot be said that there is any omission. Edwards's near-continuous calling of the police is also well documented in the affidavit. (App. 770.) As to the last allegation, the affidavit states that one of Edwards's employees (who the police believes was

Edwards himself) was asked over the phone about the discrepancies between the checks and told that the issue was going to be investigated when he called to inquire about the Car. Thus, Edwards was on notice of the investigation and could have offered reasons for his action. In addition, Edwards points to no duty that would require officers to give suspects a chance to explain their apparently criminal behavior before arresting them. Accordingly, there was no omission with respect the facts surrounding Edwards's intent, and, for reasons already discussed, Edwards's quarrel with the judicial officer's probable cause determination with respect to his intent to defraud is not relevant to this appeal.

Finally, Edwards suggests that the District Court erred in finding that he had not presented enough evidence to go forward on his retaliation claim. As an initial note, Edwards's complaint does not appear to state a "retaliation" claim, and whether he can satisfy the malice prong of the malicious prosecution claims is irrelevant, as those claims fail on probable cause grounds. In any case, we agree with the District Court that his claims of retaliatory intent are bare allegations devoid of evidentiary support.

**IV.**

Because we find that the District Court was correct in determining that the probable cause affidavit contained no material misstatements or omissions, we will affirm.